# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| BRUNO PALKO,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>  Defendant. | NO. SACV 09-780 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

Bruno Palko filed this action on July 20, 2009.[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on August 14 and 20, 2009. (Dkt. Nos. 8-9.) On January 22, 2010, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court remands this matter to the Commissioner for proceedings consistent with this opinion.

---

[1] The Complaint, filed under the name "Palko Bruno," appears to have inadvertently inverted claimant's first and last names. Palko signs his name "Bruno Palko." *See, e.g.,* AR 4, 52, 61, 261. The Court has corrected the caption to reflect that Palko is claimant's last name.

I.

**PROCEDURAL BACKGROUND**

On April 19, 2007, Palko filed an application for Supplemental Security Income ("SSI") alleging a disability onset date of February 2, 2004. Administrative Record ("AR") 8. The application was denied initially and upon reconsideration. AR 8, 38, 45. Palko requested a hearing before an Administrative Law Judge ("ALJ"), but failed to appear at the scheduled hearing on October 24, 2008. AR 31-35, 52. On January 13, 2009, the ALJ issued a decision denying benefits. AR 8-15. On May 8, 2009, the Appeals Council denied Palko's request for review. AR 1-3. This action followed.

II.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada,* 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///
///
///

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

## B. The ALJ's Findings

Palko has the following severe impairment: "degenerative disc disease." AR 10. Palko also has a medically determinable mental impairment of drug and alcohol abuse that "does not cause more than minimal limitation in [Palko's] ability to perform basic mental work activities and is therefore nonsevere." *Id*.

Palko has the residual functional capacity ("RFC") to perform a "limited range of light exertion. [Palko] can lift and carry 20 pounds occasionally and less than 20 pounds frequently. He can push and pull the same amount of weight. He can stand and walk for 6 hours out of an 8-hour work day, and he can sit without restriction. He can occasionally bend and stoop. [Palko] can occasionally grip, grasp, feel, and finger with the right hand." AR 11.

Palko is capable of performing his past relevant "light janitorial work as it is generally performed." AR 14. Palko also is capable of performing other work such as collator operator, housekeeping cleaner and photocopy machine operator. AR 14-15 (citing AR 128, 155).

## C. Consideration of State Agency Findings

Palko argues that the ALJ failed to consider the opinion of non-examining state psychiatrist Dr. H.M. Skopec. JS 3-5.

The Ninth Circuit distinguishes among three types of physicians: (1) treating physicians (who examine and treat), (2) examining physicians (who examine but do not treat), and (3) non-examining physicians (who neither examine nor treat). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An opinion of a treating physician is generally given more weight than the opinion of a non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

A non-examining physician's opinion constitutes substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, a non-examining physician's opinion cannot by itself constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n. 2 (9th Cir. 2006).

Palko's contention that the ALJ "failed to discuss or even mention" Dr. Skopec's opinions "anywhere in his decision" is incorrect. JS 3. The ALJ specifically referred to Dr. Skopec's evaluations by reference to their substantive content and exhibit numbers:

> The State agency review psychiatrists concluded that [Palko] had a severe mental impairment due to an organic mental disorder, affective disorder, and substance addiction; which caused mild limitations in activities of daily living and social functioning, moderate limitations in concentration, persistence and pace, and no episodes of decompensation; and which did not preclude the performance of simple, repetitive tasks (Exhibits B6F, B7F, B8F, B13F). Absent substance abuse, I find no evidence [Palko] has any mental limitations.

AR 14 (citing AR 198-208 (Dr. Skopec Psychiatric Review Technique Report), 209-211 (Dr. Skopec Mental RFC Assessment), 212-213 (Dr. Skopec Case Analysis), 293-96 (Dr. Naiman Case Analysis)). Furthermore, the ALJ accurately

///

4

summarized Dr. Skopec's findings. *Id.* The ALJ referred to Palko's "moderate limitations in concentration, persistence and pace." *Id.*

### D. Development of the Record

Palko argues that the ALJ failed to develop the record by neglecting to include a copy of a 2005 decision in which another ALJ granted him SSI benefits. JS 6. According to Palko, the ALJ's determination that administrative *res judicata* did not apply due to changed circumstances in his medical condition was not supported by substantial evidence due to the omission of the previous favorable ruling and the evidence that supported it. JS 8.

The principle of *res judicata* applies to administrative decisions, albeit less rigidly than in judicial proceedings. *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). As a general matter, the first ALJ's "findings concerning the claimant's residual functional capacity, education, and work experience are entitled to some *res judicata* consideration in subsequent proceedings." *Id.* at 694. However, *res judicata* is disfavored in Social Security proceedings when evidence is presented of new and material changes to the claimant's RFC, age, education or work experience. *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988). Where medical evaluations considered in connection with a new application following the termination of benefits were conducted after the initial disability determination, *res judicata* will not apply because the new evaluations "necessarily present[] new and material information not presented to the first ALJ." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008).

Palko's benefits were terminated on April 1, 2007. AR 187. "Apparently, the claimant lost his eligibility when he was imprisoned for passing a bad check."[2]

---

[2] Palko reapplied for benefits on April 19, 2007, the same month in which his benefits were terminated. AR 8. SSI benefits are suspended upon a recipient's incarceration and are terminated after twelve months of continuous suspension. 20 C.F.R. §§ 416.1325, 416.1335; *see also* Social Security Ruling ("SSR") 83-28c ("[O]nly felons who are confined have benefits suspended and

5

AR 12. The ALJ concluded that the 2005 decision was not *res judicata* because "the prior assessment of a sedentary residual functional capacity is not reasonable in light of the present record, which clearly shows [Palko] retains the residual functional capacity for a limited range of light exertion assessed by Dr. Thomas Dorsey, the orthopedic consultative examiner (Exhibit B2F, p. 5)." AR 12 (citing AR 177-82). The failure to include the 2005 decision in the record was not error because the ALJ's decision was based on medical evaluations that post-dated the initial disability determination and therefore constituted "new and material evidence not presented to the first ALJ." *Stubbs-Danielson*, 539 F.3d at 1173. *See, e.g.,* AR 177-82 (orthopedic report of Dr. Dorsey dated May 15, 2007); AR 183-88 (physical RFC assessment of Dr. Hartman dated May 22, 2007); AR 191-97 (psychiatric report of Dr. Rodriguez dated July 1, 2007); AR 198-211 (psychiatric reports of Dr. Skopec dated July 16, 2007); AR 287-96 (physical RFC assessment and case analysis of Dr. Naiman dated January 9, 2008 and March 10, 2008); AR 297-303 (psychiatric report of Dr. Smith dated March 20, 2008).

### E. Lay Witness

Palko argues that the ALJ improperly ignored the May 13, 2007 Function Report - Adult Third Party ("Function Report") submitted by his friend, Ms. Monete. JS 8-9.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to

---

then only for the duration of the incarceration"). "[T]he administrator is not required to presume that a previous disability has continued through a non-medically related termination of benefits." *Stubbs-Danielson*, 539 F.3d at 1172.

each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see Valentine v. Comm'r, SSA*, 574 F.3d 685, 694 (9th Cir. 2009).

In the Function Report, Monete stated she saw Palko five times a week to "make sure that he is OK." AR 110. She claimed he was in great pain on a daily basis. AR 110-111. According to Monete, Palko "can hardly dress himself," finds it "very painful" to feed himself, uses the toilet "very slowly," does not prepare food very often because of his pain, does no house or yard work, is unable to walk around, and shops once a week for a short time, but only when he is accompanied by someone else and with the help of an electronic chair. AR 111-114. She also reported Palko's condition adversely affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel and climb stairs. AR 115.

The ALJ determined that Monete's statements were rebutted by Palko's own statements. "For example, Ms. Monet[e] reported that [Palko] could not bend, turn, lift, or even get out of bed (Exhibit B10E, p. 4). Yet, [Palko] reported that he lives alone and does all activities of daily living independently (Exhibit B5F, p.3)." AR 14 (citing AR 138,[3] 193). The ALJ's reasons for discounting Monete's Function Report were both germane to the witness and legally sufficient.

## F. Side Effects

Palko argues that the ALJ failed to address the adverse side effects of his prescribed medications. JS 11.

Palko's medical records do not report any side effects from medications. Palko's argument that subjective statements in a questionnaire alone are sufficient to establish limitations from side effects must be rejected. *See Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (claimant has the burden to produce clinical evidence that his use of medications limited his ability to work). An ALJ is

---

[3] The ALJ's citation to page 4 of Exhibit B10E (AR 141) is incorrect; the correct page is 1 (AR 138).

7

"not required to include a discussion of side effects" where apart from the claimant's "own subjective claims of drowsiness and decreased concentration[,] [n]othing in the record suggests that [the claimant's] ability to work was affected by his medications." *Roquemore v. Comm'r*, 2010 WL 828603 at *1 (9th Cir. 2010); *see also Hopkins v. Astrue*, 227 Fed. Appx. 656, 657 (9th Cir. 2007) ("The ALJ was not obligated to consider [plaintiff's] claim that his medication made him drowsy because [he] provided no evidence to support this claim other than a statement in his daily activities questionnaire."). The ALJ did not err.

### G. Past Relevant Work

Palko argues his RFC is incompatible with the finding that he is able to perform his past relevant work as a janitor as generally performed. JS 14-17.

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'" *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). "This is done by looking at the 'residual functional capacity and the physical and mental demands' of the claimant's past relevant work." *Id.* at 844-45; *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). When an ALJ relies on the DOT for a job description of a claimant's past relevant work, the ALJ must "definitively explain" any deviation between the DOT and the claimant's noted limitations.[4] *Pinto*, 249 F.3d at 847.

---

[4] Examples of explanations for deviations are that the DOT "does not provide information about *all* occupations, information about a particular job not listed in the [DOT] may be available elsewhere, and the general descriptions in the [DOT] may not apply to specific situations." *Massachi v. Astrue*, 486 F.3d 1149, 1153 n.17 (9th Cir. 2007) (emphasis in original, citing SSR 00-4p); *see also Johnson v. Shalala*, 60 F.3d 1428, 1435 & n. 7 (9th Cir. 1995) ("persuasive evidence" supporting deviation from the DOT includes expert testimony that a

8

As noted earlier, the ALJ determined that Palko has the RFC to perform a "limited range of light exertion" and "can occasionally grip, grasp, feel, and finger with the right hand." AR 11. At step four, the ALJ concluded Palko "is capable of performing his most recent and past relevant light janitorial work as it is generally performed." AR 14-15 (citing AR 126-28, 153-55).

"[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto*, 249 F.3d at 845-46. Palko argues that an RFC limited to occasional fingering is inconsistent with the DOT description of janitorial work. The DOT indicates that the janitor position requires fingering ability "frequently - exists from 1/3 to 2/3 of the time." DOT 382.664-010. The DOT also notes that janitorial work requires medium strength, defined as "[e]xerting 20 to 50 pounds of force occasionally . . . and/or 10 to 25 pounds of force frequently." *Id.* In contrast, Palko's RFC limits him to "20 pounds occasionally and less than 20 pounds frequently." AR 11. The two Medical/Vocational Decision Guides in the record both found that Palko was "not able to perform past relevant work." AR 126, 153. The ALJ erred in not explaining the deviations between the DOT and Palko's RFC. *See Pinto*, 249 F.3d at 847.

The ALJ also determined Palko was capable of performing other work identified by the state agency vocational experts. The specific jobs cited – collator operator, housekeeping cleaner and photocopy machine operator – also appear to require frequent fingering and/or handling. AR 128, 155; DOT 208.685-010; DOT 323.687-014; DOT 207.685-014.

Remand is therefore appropriate so the ALJ may reconsider his step four, and, if necessary, step five determination. *See Harman v. Apfel*, 211 F.3d 1172,

---

particular subcategory of job not described in the DOT exists in the local job market).

1178 (9th Cir. 2000) (remand is warranted when there are outstanding issues that must be resolved before a determination of disability can be made).

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the matter is remanded to the Commissioner for proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: July 30, 2010

ALICIA G. ROSENBERG
United States Magistrate Judge